IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MAHAKALI KRUPA, LLC and
HINA PATEL,

    Plaintiffs,

v.

ALLSTATE INSURANCE CO.,

    Defendant.

3:12-CV-00569
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion for Summary Judgment (Doc. 17) filed by the Defendant, Allstate Insurance Company, in this action to recover payment under a flood insurance policy pursuant to the National Flood Insurance Act. For the reasons discussed below, the Court will deny Defendant's Motion.

### II. Statement of Undisputed Facts

On August 23, 2011, the Plaintiffs, Mahakali Krupa, LLC and Hina Patel, the LLC's representative, purchased a Subway franchise in Shickshinny, Pennsylvania from nonparty Leonard Marconi. (*See* Def.'s Statement of Undisputed Facts, Doc. 18-1, at ¶¶ 1-4.) At the time of the sale, Marconi insured the franchise with a Standard Flood Insurance Policy (SFIP) through Defendant Allstate Insurance. (*Id.* at ¶¶ 4-5.) Following the sale, the Plaintiffs wanted to transfer Marconi's SFIP into their own names, and discussed this

possibility with Marconi—though it is unclear what exactly the substance of these discussions was. (*Id.* at ¶ 4.)

A very short time after the sale, on September 8, 2011, Plaintiffs' franchise property sustained flood damage, which is valued in the Complaint at $77,105.72. (Doc. 18-1 at ¶ 6; Compl., Doc. 1, at ¶ 9.) Plaintiff Hina Patel admits in her deposition that she did not attempt to process paperwork through Allstate to transfer the SFIP from Marconi to herself until after the flood occurred. (Doc. 18-1 at ¶ 10; Hina Patel Dep., Doc. 18-3, at 21:9-23:21.)

Plaintiffs then made a claim on the existing SFIP, which Allstate denied, on the grounds that there was no policy in effect on the date of loss. (Doc. 18-1 at ¶¶ 7-8.) The basis of this denial was Defendant's assertion that, under the federal guidelines, flood insurance policies such as the one at issue here may not be transferred from one insured to another, but rather that a new policy would have to be issued, following receipt by Allstate of an application and a premium. (*Id.* at ¶¶ 12-13.) The relevant regulations creating the policy state, "You may assign this policy in writing when you transfer title of your property to someone else except under these conditions: . . . When this policy covers only personal property[.]" 44 C.F.R. Pt. 61, App. A(1), Art. VII(D)(1). In this regard, Hina Patel's deposition indicates that the Plaintiffs bought the Subway franchise and the equipment therein, but only leased the building in which the franchise operates. (Doc. 18-3 at 16:8-17:7.)

Following denial, Plaintiffs filed this lawsuit, which, in a short, five-page Complaint, seeks reimbursement for flood-related damages from Allstate in the amount of $60,000, the upper limit of reimbursement under the policy. (Compl. at ¶¶ 13, Wherefore Clause.)

## III. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 265 (1986). Once such a showing has been made, the nonmoving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## IV. Analysis

### a. Interpretation of Plaintiffs' Standard Flood Insurance Policy

Defendant Allstate Insurance is a "Write-Your-Own" (WYO) Program flood insurance carrier participating in the federal government's National Flood Insurance Program (NFIP) pursuant to the National Flood Insurance Act of 1968. (Doc. 18-1 at ¶ 19.) Under the FEMA regulations enacted pursuant to the Act, "the Federal Insurance Administrator may enter into arrangements with individual private sector property insurance companies [i.e., WYO companies] or other insurers, such as public entity risk sharing organizations. Under these arrangements, such companies or other insurers may offer flood insurance coverage under the [NFIP] to eligible applicants." 44 C.F.R. § 62.23(a). A WYO company, therefore,

> is a private insurer authorized by FEMA to provide Policies in its own name. It collects premiums in segregated accounts, from which it pays claims and issues refunds. When the funds are inadequate (as frequently occurs), [the WYO] pays claims by drawing on letters of credit issued by the United States Treasury.

*C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 265 (3d Cir. 2004). Thus, "a suit against a WYO company is the functional equivalent of a suit against FEMA." *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir. 1998). This is so because, *inter alia*, "an insured's flood insurance claims are ultimately paid by FEMA. After a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments." *Id.* (citing 44 C.F.R. Pt. 62, App. A, Art. IV(A). The regulations themselves provide that the "Federal Government will be a guarantor in which the primary relationship

4

between the WYO Company and the Federal Government will be one of a fiduciary nature, i.e., to assure that any taxpayer funds are accounted for and appropriately expended." 44 C.F.R. § 62.23(f); *see also id.* at § 62.23(g) ("A WYO Company shall act as a fiscal agent of the Federal Government . . . .").

Moreover, "[a]ll flood insurance made available under the Program is subject . . . [t]o the terms and conditions of the Standard Flood Insurance Policy," as promulgated by FEMA at 44 C.F.R. Pt. 61, App. A(1). *Id.* at § 61.4(b). The SFIP has been officially promulgated and may not be "altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator through the issuance of an appropriate amendatory endorsement, approved by the Federal Insurance Administrator as to form and substance for uniform use." *Id.* at § 61.13(d); *see also id.* at Pt. 61, App. A(1), VII(D) (SFIP, stating that "[t]his policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator").

The SFIP states that a policy cannot be assigned "when this policy covers only personal property," 44 C.F.R. Pt. 61, App. A(1), Art. VII(D)(1), implying that when a policy covering only personal property is transferred to a new owner, a new policy would need to be created . When a new policy is created, "the effective date and time of any new policy or added coverage or increase in the amount of coverage shall be . . . the 30th calendar day after the application date and the presentment of payment of premium." 44 C.F.R. § 61.11(c). However, "[w]here the initial purchase of flood insurance is in connection with the

making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is the subject of the loan shall be effective as of the time of the loan closing." *Id.* at § 61.11(b).

Taking these regulations into consideration, the Court finds that there are two material issues of fact unresolved by the existing record which preclude summary judgment.

The first issue is whether the Plaintiffs had a policy that only covered personal property. The Flood General Policy Endorsement Declarations issued to Leonard Marconi and to Hina Patel state that all money under the policy is paid toward "contents." (*See* Docs. 18-4; 18-8; *see also* Pls.' Resp. to Statement of Undisputed Facts, Doc. 20, at ¶ 12 (admitting that Plaintiffs had a "contents only" policy).) However, it is unclear what "contents" (which is an undefined term in the SFIP) means in this context, which "contents" were insured, and whether the word "contents" should be considered synonymous with the policy term "personal property." Thus, Hina Patel's deposition indicates that the Plaintiffs bought the "contents" and "equipment" inside the Subway restaurant, as well as the intangible "business" of the franchise, but does not specify further. (*See* Hina Patel Dep., Doc. 18-3, at 16:22-17:11.) Such testimony leaves open the question of whether the "equipment" and "contents" actually fit the definition of "personal property," and are not, for instance, to be considered fixtures—a legally distinct concept. *See, e.g., Lehmann v. Keller*, 684 A.2d 618, 621 (Pa. Super. Ct. 1996) ("Possessory rights regarding chattels that are attached to leased realty are determined by classifying the chattels as *either* fixtures *or*

6

personal property.") (emphasis added). Of course, it is true that "fixtures" may sometimes be considered a subset of personal property, and therefore arguably not a distinct category. *See, e.g., Smith v. Weaver*, 665 A.2d 1215, 1218 (Pa. Super. Ct. 1995) ("A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land."). And it is also true that, under the heading "Contents Location," the two Declarations read, *inter alia*, "Subject to, III. Property Covered, Paragraph B"—a reference the section of the SFIP entitled "Personal Property." (Docs. 18-4; 18-8.) But, while these considerations leave open the possibility that the Plaintiffs' policy did in fact only cover "personal property" such that Article VII(D)(1) would apply, ambiguities still exist that preclude the grant of summary judgment. First, even if "personal property" and "fixtures" *could be* considered synonymous, it is not at all clear that they *must be* treated as such, as evidenced by the body of case law that treats them separately. Second, even if the Declaration indicates that Plaintiffs' "contents" are "subject to" Article III(B), that does not mean that all of Plaintiffs' contents fall by definition exclusively under III(B). Indeed, whereas Article III(B)(2) lists a variety of property covered as "personal property," the Court has no way of knowing, on the record before it, that the "personal property" covered by the Plaintiffs' own policy corresponds to that enumerated (or referenced but unenumerated) in the text of III(B)(2).

Taking all of this into account, it is significant that the Third Circuit has ruled that, when construing the SFIP, "[i]f the policy is susceptible to two constructions . . . we will

adopt the one more favorable to the insured." *Linder & Associates, Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999) (citing *Aschenbrenner v. United States Fid. & Guar. Corp.*, 292 U.S. 80, 84-85, 54 S. Ct. 590, 592, 78 L. Ed. 1137 (1934)). Thus, considering that these ambiguities appear to exist on the record before the Court, that any such ambiguities must be resolved at the summary judgment stage in favor of the nonmoving party, and that even at trial contractual ambiguities would have to be resolved in favor of the Plaintiff, the Court finds that there is a sufficient question of whether the provisions of Article VII(D)(1) actually apply to the facts at hand to preclude summary judgment.

The second issue on which the record is silent is whether an assignment actually occurred between Marconi and the Plaintiffs under the terms of the SFIP. Under Article VII(D), the insured "may assign this policy in writing when [he] transfer[s] title of [his] property to someone else." 44 C.F.R. Pt. 61 App. A(1), Art. VII(D). Hina Patel testified to discussions with Leonard Marconi about taking over his flood insurance policy. (*See* Doc. 18-3 at 18:19-19:25.) She indicated that she paid him for such a transfer and then filled out documents with the Allstate agent to change the names on the policy, though she only did the latter after the flood. (*Id.* at 21:1-8.) The record does not, however, indicate whether a written assignment was already effected between Marconi and the Plaintiffs before the flood, when title to the franchise was transferred, even if payment on the assignment was

delayed until later. Accordingly, the existence of a valid assignment remains an issue for trial.

If such an assignment did occur—and if Plaintiffs are able to prove that their policy covered more than just personal property—then it appears on the face of the SFIP that Marconi could validly assign the policy to the Plaintiffs, without the intervention of Allstate, and that that assignment would afford the Plaintiffs coverage for losses sustained on September 8. Of course, it may be that the evidence produced at trial will establish that all of Plaintiffs' covered property was personal property and/or that no valid assignment occurred between themselves and Marconi, in which case Plaintiffs could not recover. But such issues of material fact cannot be resolved on the strength of the submissions before the Court at the summary judgment stage.

### b. Remaining Arguments

As best the Court can discern from the record before it, the issues that must be resolved at trial are primarily those discussed above. The remaining arguments that Plaintiffs advance in their papers opposing summary judgment are without merit, for reasons the Court will now discuss.

#### i. *Equitable Estoppel*

Given that, as discussed above, a suit against a WYO company is treated as the functional equivalent of a suit against FEMA, the Court must treat a WYO company

differently than it would an insurance carrier in a typical policy dispute. As the Supreme Court has stated,

> Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; [a party] could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63, 104 S. Ct. 2218, 2225, 81 L. Ed. 2d 42 (1984).

Plaintiffs here argue that "Allstate is estopped from claiming that no coverage existed on the date of the loss," (Pls.' Resp. to Mot. for Summ. J., Doc. 21, at 1), based on representations allegedly made by Allstate agent Georgeanne Purcell that Allstate could transfer Marconi's old SFIP to the Plaintiffs, (Pls.' Br. in. Opp. to Summ. J., Doc. 22, at 6). Nonetheless, based on the concerns outlined in *Heckler, supra*, the Supreme Court has clearly held that "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler*, 467 U.S. at 60.

While noting that cases of estoppel against the Government must of necessity be rare, the Supreme Court has noted that there may be some cases "in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Id.* at 60-61. In the wake of these equivocal remarks, the Third Circuit remains "one of the majority of circuits which

10

recognize the validity of an estoppel defense against governmental parties." *United States v. Asmar*, 827. F.2d 907, 912 (3d Cir. 1987).

"In order to succeed in asserting equitable estoppel against the United States, a party must at least show 'affirmative misconduct' by the government in addition to establishing the traditional elements of estoppel."[1] *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 88 (3d Cir. 1989) (citing *Asmar*, 827 F.2d at 911-13)). This test "reflects the need to balance both the public interest in ensuring government can enforce the law without fearing estoppel and citizens' interests in some minimum standard of decency, honor, and reliability in their relations with their Government." *Fredericks v. Comm'r of Internal Revenue*, 126 F.3d 433, 438 (3d Cir. 1997) (internal quotation marks and citations omitted). Assertions of equitable estoppel against the federal government are, nonetheless, rarely successful. *Cf., e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S. Ct. 2465, 2470, 110 L. Ed. 2d 387 (1990) ("Courts of Appeals have taken our statements [in *Heckler* and similar cases] as an invitation to search for an appropriate case

---

[1] As the Third Circuit has stated:
> The traditional elements of estoppel are as follows:
>> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act . . . the first person is not entitled .
>> . . .
>> (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1231 (3d Cir. 1987) (quoting Restatement (Second) of Torts § 894(1)).

in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.").

Moreover, it is well-established that "[j]ust as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85, 68 S. Ct. 1, 3, 92 L. Ed. 10 (1947). Accordingly, the Plaintiffs had constructive notice of the official regulations, notwithstanding any contrary representations that might have been made.

In light of this, Plaintiffs have a heavy burden to prove that any purported representations actually amounted to "affirmative misconduct." There is, moreover, nothing in the summary judgment record suggesting that Purcell engaged in behavior worse than the previous forms of misconduct which the Supreme Court held did not give rise to equitable estoppel in, *e.g.*, *Heckler* and *Merrill*. According to Hina Patel's deposition testimony, after being informed that the Patels wanted to transfer Marconi's existing policy into their own name, Purcell only took down the Patels' personal information, (*see* Hina Patel Dep., Doc. 23, Ex. 1, at 20:6-10), "said that she could get [the transfer] done," (*id.* at 20:17-21), and then had the Patels come into her office after the flood to sign paperwork related to the transfer, (*id.* at 21:9-22:6). Gopal Patel, Hina's brother and a partner in Mahakali Krupa, does not say anything more, but only recounts discussions with Purcell in

which he checked on what progress Purcell had made in processing their paperwork and in effecting the name change. (*See* Gopal Patel Dep., Doc. 23, Ex. 2, at 9:7-14:8.)

At most, this testimony indicates that Purcell misled the Plaintiffs into believing that insurance coverage existed when it in fact did not. However, in *Merrill, supra*, the Supreme Court already ruled that misrepresentations by an agent of the government as to the extent of insurance coverage do not give rise to equitable estoppel. *See Merrill*, 332 U.S. at 382-84. In *Merrill*, a County Agricultural Conservation Committee advised plaintiffs that their wheat crops were insurable under the Federal Crop Insurance Act, when the crops were in fact not insurable. *Id.* at 382. In ruling against an assertion of equitable estoppel, the Court explained that

> anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . If the Federal Crop Insurance Act had by explicit language prohibited [insurance coverage for the relevant conduct], the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat.

*Id.* at 384; *see also Richmond*, 496 U.S. at 420 ("While we recognized [in *Merrill*] the serious hardship caused by the agent's misinformation, we nonetheless rejected the argument that his representations estopped the Government to deny insurance benefits. We recognized that not even the temptations of a hard case will provide a basis for ordering recovery contrary to the terms of the regulation, for to do so would disregard the duty of all courts to

13

observe the conditions defined by Congress for charging the public treasury.") (internal quotation marks and citations omitted).

To succeed on the present claim, Plaintiffs would have to show that Purcell's actions not only evinced "affirmative misconduct" more egregious than that in *Merrill* but also more egregious than that in all the other cases in which the Supreme Court rejected equitable estoppel claims against the federal government. *Cf. Richmond*, 496 U.S. at 419-22 (collecting cases). Given that Plaintiffs' own testimony only suggests that Purcell at most handled paperwork in a confusing or misleading manner, the record falls well short of such a showing.

Nor can Plaintiffs maintain an estoppel argument based on a "Flood General Policy Endorsement Declaration" issued by Allstate on September 26, 2011, which purported to establish coverage effective August 23 of that year. (*See* Doc. 21 at 1.) The Declaration is a document issued by Allstate to Hina Patel that states that a flood insurance policy exists for a term of March 16, 2011 to March 16, 2012, and that it was changed into Patel's name on August 23, 2011. (*See* Doc. 23, Ex. 9.) However, a later letter issued by Allstate on October 19, 2011 cancelled that policy and created a new one. (*See* Doc. 23, Ex. 10.) That was because if, as Allstate believes, no valid assignment took place between Marconi and the Patels, then the August 23 policy could not have been effective on the dates stated in the initial Declaration, given the requirements to change an existing policy discussed in the preceding section. (*See, e.g.*, Doc. 22 at 5.) It may well have been irresponsible for

Allstate to issue a Declaration wrongfully informing the Plaintiffs that coverage existed. Nonetheless, if it turns out that coverage really did not exist, then Allstate's irresponsibility cannot equitably estop the federal government absent the showing of "affirmative misconduct" discussed above—a showing for which there exists no support in the summary judgment record.

### ii. Converting the Action into One for Misrepresentation

Next, Plaintiffs argue that, even if there was no policy in effect at the time of the loss, Allstate is still liable to them in tort for the misrepresentations of its agent Purcell.

This argument, however, fails for several reasons. First, the FEMA regulations provide:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. § 61.5(e). Under these regulations, Allstate cannot be liable for Purcell's alleged misrepresentations because Purcell acts only as an agent for the insured. *See Remund v. State Farm Fire & Cas. Co.*, 483 Fed. App'x 403, 408 (10th Cir. 2012) ("By creating the legal fiction that an insurance agent 'acts for the insured,' instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for

15

certain of the agent's tortious acts."). Therefore, any tort claim would have to proceed against Purcell herself, not Allstate. Purcell, however, is not a party to this lawsuit and Plaintiffs never sought leave to add her as one. *Cf. Parker v. Mississippi Farm Bureau Cas. Ins. Co.*, ___ F. Supp. ___, 2014 WL 347147, at *6 (S.D. Miss. 2014) ("To the extent that the plaintiff attempts to impute [the insurance agent's] allegedly tortious acts to Farm Bureau, such an attempt fails because the 'structure of the NFIP precludes the imputation of any claims against the insurance agent to the insurance company.' The plaintiff would still be allowed to sue his own agent in a state law tort action, but [Plaintiff] did not name [his agent] as a defendant in this case.") (quoting *Bull v. Allstate Ins. Co.*, 649 F. Supp. 2d 529, 541 (W.D. La. 2009) (internal citation and alterations omitted). As in *Parker*, this Court cannot construe the Complaint against a nonparty who was never named as a defendant.

Nor can Plaintiffs maintain a misrepresentation action against Allstate itself for the allegedly false information provided in its September 2011 General Policy Endorsement Declaration, discussed above. First of all, tort claims arising from flood insurance policy administration are preempted by the National Flood Insurance Act. *See, e.g., C.E.R.*, 386 F.3d at 268 ("The reasoning of our decision in *Van Holt* [*v. Liberty Mut. Fire Ins. Co., supra,*] compels the conclusion that state-law claims are preempted by the NFIA. The uniformity touted in that decision would be seriously jeopardized if state tort claims were permitted to proceed, even if those claims were resolved in federal court."). Second, even if, as Plaintiffs argue, the Declaration arose out of a procurement dispute—a disputable issue which the

Court need not resolve at this time—and therefore might not be preempted by federal law, see, e.g., Padalino v. Standard Fire Ins. Co., 616 F. Supp. 2d 538, 543 (E.D. Pa. 2008) ("The Third Circuit . . . has not dealt with the preemption issue in a case involving misrepresentations made during the procurement of a SFIP."), a misrepresentation claim against Allstate would fail on its merits. Though the September Declaration clearly provided misinformation, in order to use it as the basis for a tort claim, Plaintiffs would have to show that they somehow relied on that misinformation to their detriment. However, both the dates of issuance provided on the face of the Declaration and in the Plaintiffs' Brief are after the date of loss, September 8, (Compare Doc. 23, Ex. 9 (September 26) with Pls.' Statement of Mat. Facts, Doc. 19, at ¶ 9 (September 21)), meaning that Plaintiffs could not logically have relied on these misrepresentations to their detriment.

Finally, the cases Star Spa Services, Inc. v. Robert G. Turano Insurance Agency, Inc., 595 F. Supp. 2d 519 (M.D. Pa. 2009) and Williams v. Standard Fire Insurance Co., 892 F. Supp. 2d 615 (M.D. Pa. 2012) are not applicable to the issues in this case. Both of those cases involve issues of whether state tort claims related to the procurement of flood insurance are preempted by the National Flood Insurance Act. At this stage, the Court assumes, without deciding that, if this case indeed involved a procurement dispute, it would not be preempted by federal law. See, e.g., Memorandum from Edward L. Connor, Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy, No. W-09038 (July 16, 2009), available at

http://www.nfipiservice.com/pdf/bulletin/w-09038.txt ("Insurance agent procurement disputes or any allegation of negligence on the part of the insurance agent related to procurement are not subject to preemption."). However, even if Plaintiffs' claims are not preempted, they still fail as a matter of law for the reasons discussed above. Because Purcell's negligence—if any—cannot be imputed to Allstate, and because there is no evidence that Purcell or Allstate did anything wrong during the summary judgment process, there is insufficient evidence in the summary judgment record to support a tort claim for misrepresentation.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 17) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge